## King *v.* Burns, Appellant.

*Judgment—Opening judgment—Evidence—Lapse of time.*

A judgment on a verdict in favor of the plaintiff on an issue to determine the amount due on a judgment note dated May 19, 1894, payable three months after date, and entered October 25, 1913, by the trustees of the deceased payee's estate against two joint makers, will not be reversed where the evidence is fairly submitted to the jury with instructions that the burden of proving that the note had been paid is on the defendant, that the mere lapse of time less than twenty years does not raise a legal presumption of payment, and that in order to create a presumption of payment in fact there must be persuasive evidence of payment in addition to lapse of time.

In such a case testimony in regard to admissions or statements made of payments, are to be received with caution, especially where the party who is said to have made them is dead.

Argued April 10, 1916.　Appeal, No. 71, April T., 1916, by defendant, from judgment of C. P. Erie Co., Sept. T., 1913, No. 447, on verdict for plaintiffs in case of E. W. King and Fred Koehler, Trustees of the Estate of Jackson Koehler, deceased, *v.* James H. Burns and Wellington Downing.　Before ORLADY, P. J., HENDERSON, KEPHART, TREXLER and WILLIAMS, JJ.　Affirmed.

Issue to determine the amount due on a judgment. Before WALLING, P. J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

It seems at that time Mr. Burns was engaged in conducting a restaurant or saloon in this city, and he sold out his saloon in 1895, in August.　And his son, Frank Burns, is called here as a witness, and he says he was there in the saloon after his father had sold out, and saw his father there with Mr. Jackson Koehler, that they had some business transactions and he saw his father pay Jackson Koehler some money, and saw Jackson Koehler give a receipt to his father, and that they talked in the

saloon at that time that they were now square, that squared them up—or words to that effect; you will remember the testimony.

[Mr. Frank Burns says that receipt got destroyed, with other papers, in a fire, some six years ago. He says the receipt said in full of all accounts. Of course this note is not technically an account. A note is a little different from an account, but that is what he says the receipt showed. He says no note was spoken of and no note was present at the time of this business transaction in the saloon. Was the note included in that settlement? It was not present there. Was that a settlement including this note?] (8)

[There is nothing else in the case that I recall that would tend to show that the note had been paid, except lapse of time, about which I will speak to you presently. There is nothing to show or indicate in the testimony that Mr. Burns or Mr. Downing ever paid this note, unless it was paid at the time of that settlement. Was it paid at that time? Do you find from the testimony of Frank Burns as to what he says took place there? Was that a settlement including this note, or was it simply a settlement of some other accounts that they had?] (9)

According to all the evidence, as I remember it, Mr. Burns was indebted to Jackson Koehler during the time he was in the saloon business in Erie. It is the theory of the plaintiffs that that settlement, whatever it was, was simply as to the current indebtedness and did not include this note in suit, which was the note of Mr. Burns and Mr. Downing.

This is a sealed note. After it had been due twenty years, it would be presumed to be paid in the absence of evidence to the contrary—that is, the law would raise a presumption of payment, but the judgment was entered on this note on October 25, 1913. At that time it was less than nineteen years old, and therefore the law would not presume the note paid. But lapse of time less than twenty years will, with other persuasive circumstances,

justify a jury in finding that a note has been paid—a sealed note—, but there must be other persuasive circumstances. If you find this note is paid, you must find that there are persuasive circumstances tending to show payment in addition to the lapse of time. But there is this circumstance, testified to by Mr. Frank Burns, as to what took place there in his father's restaurant or in the restaurant which his father had formerly conducted; then you have the other circumstances of lapse of time as possibly tending to some extent to strengthen the testimony of Frank Burns, or that might cause you to think that the note was included in that settlement.

[It is not shown that Jackson Koehler made any effort to collect this note during his lifetime. He lived eight or nine years after this note was due, and, so far as it appears here, took no steps, made no effort, to collect the note. It is a circumstance in his favor that the note was found in his possession among his papers after his death. If a man pays a note, the natural thing is to take up the note. If Mr. Burns paid this note, the natural thing would be for Mr. Burns to have said "I want my note" and that is especially so when he had Mr. Downing also on the note. Mr. Downing was one of the makers of the note. If Mr. Burns paid it, he paid it without having it delivered up to him. If that settlement included this note, it would seem to have been made there in the saloon without the note being mentioned at all, so far as Mr. Frank Burns testifies. And I say the circumstances that the note was not there and not considered there, so far as Mr. Burns recollects, and the fact that the note was found among Mr. Koehler's papers eight or nine years after would be circumstances tending to show that the note was not paid by the payment made there at the saloon at that time. There is another circumstance, according to the evidence of Mr. Gehrlein, the accountant. He says he had charge of Mr. Jackson Koehler's papers and was his personal accountant. He says that Jackson Koehler handed him this note in 1901

to enter or list in a book among Mr. Koehler's securities. Mr. Koehler's declarations and acts would not be evidence in his own favor, but that evidence does tend to show that the note was there in existence by Mr. Koehler handing it to his bookkeeper to enter at that time. There is the further circumstance that after Mr. Koehler died his administrator demanded payment on this note of Wellington Downing, and Mr. Downing told him he thought or supposed the note had been paid, and Mr. Heuer, the administrator, took no steps to collect it, and turned it over to the trustees and they held it afterwards; they took no steps to collect it—at least for some years, —and Mr. King, one of the trustees, says that he supposed that the note was uncollectable, that he supposed the parties were not financially responsible; and the reason given, as I understand the testimony of the plaintiffs, for entering this note in October, 1913, was that Mr. Downing at that time had come into possession of some property. You will remember that.]   (10)

There is no evidence offered here as to the financial circumstances of any of these parties, as I recall. Mr. Jackson Koehler seems to have been a man of some property. There is nothing here to show the financial condition of the defendants, as I recall it.

There is evidence that Mr. Burns went from Erie to Painesville where for some years he acted as agent for Jackson Koehler—perhaps in the brewery business or wholesale business. There is evidence that later Mr. Koehler had a mortgage against Mr. Burns, which he foreclosed, and sold the property and bought it himself. That would not tend to show that this note was paid or that it was not paid. It might tend to show that Mr. Burns was not in very affluent circumstances.

It is argued here on behalf of the defendant that if the note had not been paid at that time, Mr. Koehler would have been apt to have tried to collect it, but, so far as appears, the mortgage was sufficiently large to require the

555, (1916).] Opinion of Court below—Opinion of the Court.

sale of the property, so I do not see how that circum-stance is of much importance here.

Perhaps Jackson Koehler's death in 1903 might be a reason why the note was allowed to run so long without an effort being made to collect it. Perhaps, as Mr. King says, they supposed the parties to be insolvent; at all events, no efforts seem to have been made to collect the note until it was entered in judgment in October, 1913.

You should remember and consider all the evidence in the case, whether referred to by the court or not. The burden of showing payment rests upon the defendant. The evidence tending to show payment is strengthened somewhat by the lapse of time, but the lapse of time, while strengthening the evidence, is not sufficient without other evidence to justify a jury in finding the note was paid.

*Errors assigned* were (8, 9, 10) above instructions quoting them.

*Samuel Y. Rossiter,* with him *Harry K. Blake,* for appellant.

*C. Arthur Blass,* with him *William E. Hirt,* for appellee.

OPINION BY TREXLER, J., July 18, 1916:

The only question is whether there was sufficient evidence to show that the judgment note in question had been settled or paid for. The note was dated May 19, 1894, payable three months after date. It was not entered of record until October 25, 1913. The court below opened the judgment and submitted the question to the jury as to whether there was anything due upon the note. Some assignments are directed to the admission of testimony but as no exceptions were filed, we need not consider them. See Daly's Est., 55 Pa. Superior Ct. 488;

Green & Co. v. Thompson, et al., 172 Pa. 609; Com. v. Spencer, 6 Pa. Superior Ct. 256.

The note was under seal and purported consideration and it was incumbent upon the defendant to show that it had been paid. The lapse of 19 years would be a circumstance in connection with other testimony tending to show the note had been paid. In any event the matter had to go to the jury. The defendant produced a witness who testified that he had been present on one occasion and heard a conversation between his father, one of the defendants, and Jackson Kohler, the payee of the note, and saw his father pay Kohler some money and that Kohler gave a receipt to his father; that at that time it was said that "we are now square" or "that it squared them up"; that the receipt was destroyed in a fire some years ago, but that it was in full of all accounts. There was no note spoken of at the time and the note was not given to the defendant but it was found among the effects of the plaintiff after his death. It is claimed that the court did not in its charge sufficiently dwell upon the testimony of this witness. We think the charge was fair in this respect, in fact, the judge might have gone further and told the jury that testimony in regard to admissions or statements made of payments are to be received with caution, especially where the party who is said to have made them is dead: Rehm v. Frank, 16 Pa. Superior Ct. 175. The comments of the court upon the evidence were to our mind fair and well within its province.

We have gone over the assignments of error carefully and we think they require no further reference. It was purely a matter of fact for the jury to determine whether the note had been paid or not. The court could not instruct that a lapse of 19 years was conclusive as to payment, or that a failure to make an attempt to collect had wrought a presumption of payment. It is true a shorter period than 20 years with presuasive circumstances might furnish ground for the presumption but as was said in Diamond v. Tobias, 12 Pa. 312, quoted in Moore

v. Smith, 81 Pa. 182, "Exactly what these circumstances may be never has been and never will be defined by law; there must be some circumstances and when there are any it is safe to leave them to the jury."

The judgment is affirmed.